UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                           :          **FOR PUBLICATION**
In re:                    :
                    :          Case No.: 08-10129 (MG)
       KWABENA OSEI,       :          Chapter 13
                    :
                Debtor    :
------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER OVERRULING OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

*A P P E A R A N C E S:*

STUART IRWIN DAVIS
*Counsel for the Debtor*
2931 Westchester Avenue
Bronx, NY 10461
By:    Stuart Irwin Davis

JEFFREY L. SAPIR
*Chapter 13 Trustee*
399 Knollwood Road
Suite 102
White Plains, NY 10603
By:    Jody L. Kava

PAUL J. HOOTEN & ASSOCIATES
*Counsel for eCAST Settlement Corp.*
5505 Nesconset Highway
Suite 203
Mt. Sinai, NY 11766
By:    Christopher M. Collins
           222 E. 93rd St., 18-D
           New York, NY 10128-3756

**MARTIN GLENN**
**United States Bankruptcy Judge**

## INTRODUCTION

Before the Court is an objection filed by eCAST Settlement Corporation ("eCAST") to confirmation of Kwabena Osei's ("Debtor") proposed chapter 13 plan. (ECF Doc. # 7.) eCAST argues that Debtor's plan cannot be confirmed because in calculating disposable income the Debtor deducted the full amount allowed under the applicable Local Standards for a mortgage/rental expense in a household of Debtor's size and location, even though Debtor's actual monthly rental expense is lower. eCAST argues that the Local Standards are only a ceiling on the amount of mortgage or rental expense that may be deducted from a debtor's current monthly income. When a debtor actually spends less than the Local Standards for mortgage or rent, eCast argues, a debtor may only deduct the actual expenditure, and must pay the surplus to creditors under a plan. The Debtor argues that a debtor may deduct the mortgage or rental expense amount permitted by the Local Standards.

For the reasons explained below, eCAST's objection to confirmation is overruled. Resolving the issue requires the Court to interpret statutory language added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Other bankruptcy courts addressing the issue have reached different conclusions. The Second Circuit has not resolved the issue. The Court concludes − as have other bankruptcy judges in the Second Circuit − that a debtor is entitled to deduct the full amount permitted by the Local Standards.

# BACKGROUND

On January 18, 2008, Debtor filed his petition as well as a proposed chapter 13 plan.  The

plan provides for payments to the Chapter 13 Trustee of $353.83 per month for 60 months.

(ECF Doc. # 2.)  Payments over the 60 months total $21,229.80.  After accounting for the

Chapter 13 Trustee's 10% fee, creditors would receive a distribution of $19,106.82 if the Debtor

successfully completes the plan.  Debtor's schedules list only unsecured non-priority claims.

Based on a payout to unsecured creditors of $19,106.82, eCAST estimates that unsecured

creditors would recover approximately 20% of their claims over the life of the plan.

eCAST purports to hold two separate valid unsecured claims based on credit cards held

by Debtor.  (Case No. 08-10129, Claims Nos. 2 and 3.)  The proofs of claim show that eCAST is

the assignee of claims originally held by "FIA Card Services aka Bank of America."  Claim 2 is

in the amount of $26,446.85; Claim 3 is in the amount of $28,444.70.  eCAST's objection states

that both claims are for the credit card balances owed as of the petition date.  Together, the two

claims are approximately 57% of Debtor's scheduled unsecured non-priority debt.

Debtor's Schedule J discloses that his actual monthly rental expense is $1,150.  For

purposes of eCAST's objection, it is undisputed that for a three-person household in Bronx, NY,

the Local Standards[1] allow a deduction of $1,494 from a debtor's current monthly income.[2]  The

---

[1]    The Internal Revenue Service has developed two broad categories for standard deductions of expenses—
National Standards and Local Standards.  For chapter 13 cases involving above median income debtors, these
expenses are then incorporated into the Bankruptcy Code for purposes of calculating a debtor's disposable income
that must be committed to plan payments.  *See* 11 U.S.C. §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I).  "National
Standards" include five categories of expenses:  food, housekeeping supplies, apparel and services, personal care
products and services, and miscellaneous expenses.  "Local Standards" include transportation and housing costs.
eCAST's objection to confirmation of Debtor's plan takes issue only with Debtor's housing expense deduction
under the Local Standards.

[2]    *See* http://www.usdoj.gov/ust/eo/bapcpa/20080101/bci_data/housing_charts/irs_housing_charts_NY.htm.
The Local Standards provide different expense allocations depending on when a particular debtor's case is filed.
Debtor filed his case on January 18, 2008.  For bankruptcy filings between January 1, 2008 and January 31, 2008, a
Bronx County household of three may deduct $1,494 for "mortgage/rent" expense when calculating disposable
income.

Debtor deducted $1,494 for monthly rental expenses in his Statement of Current Monthly

Income.  The $344 per month difference between Debtor's actual rental expense and the amount

allowed under the Local Standards, if added to payments in his current plan, would pay

unsecured creditors an additional $20,640 over the life of the plan.

A confirmation hearing was held on May 14, 2008, at which time the Court heard

argument on eCast's objection.  eCast's counsel argued that the Debtor is required to use the

lower actual rental expense figure.[3]  Debtor's counsel argued that the higher amount under the

Local Standards applies.  Counsel for the Chapter 13 Trustee, in response to a question from the

Court, agreed with the Debtor that the amount under the Local Standards for mortgage/rental

expense should be applied.  Conf. Hr'g. Tr. 7:4-22 (May 15, 2008).  The Court took the matter

under advisement and now concludes that the Debtor is entitled to use the higher amount in the

Local Standards in computing disposable income that must be applied to the plan.

## DISCUSSION

### A.  Overview of the Relevant Statutes, Bankruptcy Rules, and Other Guidelines

Bankruptcy Code § 1325 governs confirmation of a chapter 13 plan.  Section 1325(b)(1)

provides as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of
> the plan, then the court may not approve the plan unless, as of the effective date of the
> plan--
>
> > (A) the value of the property to be distributed under the plan on account of such claim
> > is not less than the amount of such claim; or

---

[3]     eCAST argues the same point in its written objection.  ECF Doc. # 7.  While this opinion notes that more published decisions hold that a debtor may take the full deduction allowed under the Local Standards, eCAST fails to cite *any* authority contrary to its position in the written objection.  In particular, eCAST fails to disclose rulings in cases in which it made and lost the same argument, including one oral ruling in this district issued by Judge Morris only two months prior to Debtor's May 14, 2008 confirmation hearing.  *See In re Kramer*, Case No. 07-35164 (Bankr. S.D.N.Y. Mar. 11, 2008).

> (B) *the plan provides that all of the debtor's projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan *will be applied to make payments to unsecured creditors under the plan*.

11 U.S.C. § 1325(b)(1) (emphasis added).

Section 1325(b)(2) explains how to determine "disposable income" under § 1325(b)(1)(B). Section 1325(b)(2) provides as follows:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

11 U.S.C. § 1325(b)(2).

For debtors above the applicable median income levels, § 1325 also directs that "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ." 11 U.S.C. § 1325(b)(3).

Although § 1325(b)(3) references § 707(b)(2) for determining the "amounts reasonably necessary to be expended" in calculating disposable income, § 707 generally governs dismissal of a chapter 7 case or conversion of a chapter 7 case to a case under chapter 11 or chapter 13. For purposes of § 1325(b)(3)'s cross-reference to § 707, the relevant provision provides as follows:

> The debtor's *monthly expenses shall be* the debtor's *applicable monthly expense amounts specified under the National Standards and Local Standards*, and the debtor's *actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service* for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

5

FED. R. BANKR. P. 1007(b)(1) also addresses how to interpret allowed expenses in calculating disposable income.  This provision states that except in chapter 9 municipality cases, a debtor "shall file schedules of assets and liabilities, a schedule of current income and expenditures . . . and a statement of financial affairs, prepared as prescribed by the Official Forms."  Official Form 22C[4] is the form used for creating the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."  At Line 25B of Form 22C, a debtor must include mortgage/rent expense, which is then deducted from current monthly income (along with other expenses) to arrive at the debtor's disposable income.  Line 25B of the form states the following:

> Enter in Line a below, the amount of the IRS Housing and Local Standards; mortgage/rent expense for your county and household size (this information is available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter on Line b the total of the Average Monthly Payments for any debts secured by your home, as stated in Line 47; subtract Line b from Line a and enter the result in Line 25B.  Do not enter an amount less than zero.

The Local Standards referenced in § 707(b)(2)(A)(ii)(I) and in Official Form 22C are adopted and periodically revised by the Internal Revenue Service.  The IRS Financial Analysis Handbook ("Financial Analysis Handbook" or "Handbook") "provides instructions for analyzing [a] taxpayer's financial condition."  This may provide a basis for the IRS to request payment in full or in part by a taxpayer, determining whether to file a lien, initiating enforcement action, or entering into some other sort of resolution of a tax dispute.[5]  For purposes of recovery of unpaid taxes, the IRS takes the position that in calculating the correct expense deduction under the Local

---

[4]    Official Form 22C is available at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#official.

[5]    Financial Analysis Handbook, § 5.15.1.1, *available at* http://www.irs.gov/irm/part5/ch15s01.html#d0e197722.

Standards, "[t]axpayers will normally be allowed the local standard or the amount actually paid, whichever is less."  Financial Analysis Handbook, § 5.15.1.7.[6]

### B.  Survey of Cases Addressing Expense Deductions under the Local Standards

In the short period since § 1325(b) was amended by BAPCPA, numerous courts around the country have addressed how properly to calculate a debtor's "projected disposable income" when a debtor claims the full expense deduction for mortgage or rent provided in the Local Standards, even though the debtor actually spends less than that amount.  To date, no clear consensus has emerged regarding how to treat expense deductions under the Local Standards. More reported decisions allow debtors to claim the full expense amount under the IRS guidelines than cases treating the Local Standards as an expense ceiling or cap.  The reasoning supporting each view has by now been thoroughly presented.  Accordingly, this decision adopts heavily from the numerous thoughtful opinions authored by courts on both sides of the issue.

This issue usually arises in disputes over a debtor's calculation of mortgage/rent expenses or vehicle ownership expenses, both of which are expenses covered by the Local Standards and therefore treated identically for purposes of statutory construction.[7]  Courts holding that a debtor may deduct the full expense amount for mortgage/rent or vehicle expenses under the Local Standards generally find that Bankruptcy Code §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I) are unambiguous, emphasizing the language in § 1325(b)(3) that expenses "shall be determined" in

---

[6]      The Financial Analysis Handbook treats expenses under the National and Local Standards differently. While § 5.15.1.7 limits a taxpayer to deducting the lesser of the Local Standards or actual expenses, the IRS allows a taxpayer the full amount of the National Standards deductions, "without questioning the amount actually spent." Financial Analysis Handbook, § 5.15.1.8.

[7]      Since "mortgage/rent" and other transportation expenses are covered by IRS Local Standards, § 707(b)(2)(A)(ii)(I) states for both categories that the appropriate expense deduction would be the "applicable monthly expense amounts," as opposed to the "actual monthly expenses" to be deducted for expenses labeled "Other Necessary Expenses" under the IRS guidelines.  *See also In re Morgan*, 374 B.R. 353 (Bankr. S.D. Fla. 2007) (noting that most courts considering the appropriate deduction a debtor may take under the Local Standards have decided the issue for transportation expenses, even though housing expenses are treated identically by the statute).

accordance with §§ 707(b)(2)(A) and (B), and in § 707(b)(2)(A)(ii)(I) stating that a debtor's

monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the

National Standards and Local Standards." *See, e.g., In re Kimbro*, 2008 WL 2369141 (B.A.P.

6th Cir. June 12, 2008); *In re Morgan*, 374 B.R. 353, 359-60 (Bankr. S.D. Fla. 2007); *In re

Barrett*, 371 B.R. 855, 857-58 (Bankr. S.D. Ill. 2007); *In re Swan*, 368 B.R. 12, 18-19 (Bankr.

N.D. Cal. 2007); *In re Prince*, 2006 WL 3501281, No. 06-10328C-7G, slip op. at *2 (Bankr.

M.D.N.C. Nov. 30, 2006); *In re Naslund*, 359 B.R. 781, 791-92 (Bankr. D. Mont. 2006); *In re

Haley*, 354 B.R. 340 (Bankr. D. N.H. 2006); *In re Farrar-Johnson*, 353 B.R. 224, 229 (Bankr.

N.D. Ill. 2006); *In re Fowler*, 349 B.R. 414, 417-19 (Bankr. D. Del. 2006); *In re Guzman*, 345

B.R. 640, 646 (Bankr. E.D. Wis. 2006).  As a result, these courts do not look to the IRS

interpretation of the Local Standards deduction in the Financial Analysis Handbook to determine

the correct expense deduction.  Indeed, most of these courts determined that resorting to the IRS

Financial Analysis Handbook to ascertain the intent of Congress would be inappropriate because

the Handbook is not referenced in either §§ 1325(b)(3) or 707(b), and the text of the Handbook

contradicts the plain meaning of these statutory provisions.  *See, e.g.*, *In re Swan*, 368 B.R. at 19

("None of the courts using the IRS publications in reaching their decisions cited any specific

authority for doing so, but simply found it 'instructive' to do so."); *In re Naslund*, 359 B.R. at

792; *In re Farrar-Johnson*, 353 B.R. at 231 ("[T]he statute is what matters (and if necessary the

legislative history), not internal IRS manuals.").  Other courts note that the Local Standards are

used by the IRS to limit a taxpayer to the lesser of a standard allowance or the taxpayer's actual

expense when filing tax returns, which is an entirely different purpose than the purpose

envisioned for use by bankruptcy courts under BAPCPA, thereby limiting the usefulness in

referencing the Handbook even if it were otherwise proper. *In re Prince*, 2006 WL 3501281, at *2.

Courts finding that the Local Standards act as a ceiling or cap on the amount of expense deductions first find ambiguity in language in §§ 1325 and 707(b)(2), and then, in resolving the ambiguity, place strong emphasis on the IRS's interpretation of expense calculations in the Financial Analysis Handbook. *See Wieland v. Thomas (In re Thomas)*, 382 B.R. 793, 798 (D. Kan. 2008) ("[I]n allowing the 'applicable . . . amounts specified under the . . . Standards,' Congress has imported those tables as a whole, with their contents' context and meaning-i.e., with the numbers representing caps, as *applied* by the IRS-into the means test calculation.") (emphasis in original); *In re Rezentes*, 368 B.R. 55, 61-62 (Bankr. D. Haw. 2007) (finding ambiguity in § 707(b)(2)(A)(ii)(I)'s reference to "applicable monthly expense amounts" and then stating "[i]f Congress had intended to adopt the IRS standards but prevent the courts from looking to the IRS's own interpretations of its standards, it seems reasonable to expect that it would have said so explicitly"); *In re Slusher*, 359 B.R. 290, 299-300, 309 (Bankr. D. Nev. 2007) (finding ambiguity in § 1325(b)(1)(B)'s use of "projected disposable income" when compared to the directive in §§ 1325(b)(2) and (b)(3) to calculate "disposable income" based on the IRS Standards, and then concluding that "Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances. In making that inquiry, it makes no sense to turn a blind eye to existing administrative interpretations of the very text Congress has specified").

There do not appear to be any reported decisions on this issue in this District. However, the Court has found three reported decisions by other Second Circuit bankruptcy judges, all

concluding that a debtor may properly claim the full expense amounts allocated under the Local Standards even when the debtor actually spent less. *See In re Schneider*, 2008 WL 1885768, No. 07-32487, slip op. (Bankr. N.D.N.Y. Apr. 28, 2008) (overruling objections by creditor and trustee after finding that § 707(b)(2)(A)(ii)(I) is unambiguous, allowing a debtor to deduct the full expense amount under the Local Standards for transportation/ownership expenses); *In re Roberts*, 2008 WL 542503, No. 07-210247, slip op. (Bankr. D. Conn. Feb. 28, 2008) (overruling objection by chapter 13 trustee and allowing debtor to deduct the full amount of a transportation ownership expense for a vehicle she owned free and clear of any lease or other encumbrance); *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007) (holding that Congress's intent in adopting the new § 1325(b)(3) was to allow courts to adopt a mechanical view in determining projected disposable income, looking to the deductions set out in § 707(b)(2) to determine the expense amount of the disposable income equation rather than actual expenses shown in a debtor's schedule J).

### C.  The Plain Language Arguments

Determining how to apply §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I) first requires deciding whether the language of these sections is ambiguous.  "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. U.S.*, 242 U.S. 470, 485 (1917); *see also Mallard v. United States Dist. Ct.*, 490 U.S. 296, 300 (1989) ("Interpretation of a statute must begin with the statute's language."); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text.").  The plain meaning of a statute is "determined by reference to the

language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("[T]he court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."); *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another."). If the language of a statute is not ambiguous, all other inquiry ends and the statute is construed in accordance with its plain meaning. *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003). Only if the text of the statute is ambiguous may courts resort to consideration of the legislative history and the canons of statutory construction in order to resolve the ambiguity. *Greenery Rehabilitation Group, Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998). Once ambiguity is found, it becomes the court's duty "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 827 (9th Cir. 1989).

As an initial matter, this Court does not find ambiguity in the plan language of §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I). When read together I find that §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I) as well as the interpretation given these statutes by Official Form 22C and Committee Notes to the Official Form all emphasize that the Local Standards provide for the exact amounts of mortgage/rent expense to be deducted by a debtor. Section 707(b)(2)(A)(ii)(I) even goes so far as to distinguish the "applicable monthly expense amounts" which may be deducted under the Local Standards for items such as mortgage/rent expense from the "actual

monthly expenses" for "Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides."

The Court recognizes that some other courts have found ambiguity in the language of §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I) while I have not.  These other courts often find ambiguity in either § 707(b)(2)(A)(ii)(I)'s reference to "applicable monthly expense amounts specified under the National Standards and Local Standards," or in § 1325(b)(3)'s mandate that reasonably necessary expenses be determined "in accordance with" §§ 707(b)(2)(A) and (B).  *In re McGillis*, 370 B.R. 720, 730 (Bankr. W.D. Mich. 2007) (finding ambiguity in § 1325(b)(3)); *In re Rezentes*, 368 B.R. at 61-62 (finding ambiguity in § 707(b)(2)(A)(ii)(I)); *In re Slusher*, 359 B.R. at 307-08 (same).  For this reason, these two potential sources of ambiguity are addressed in more detail below.

### 1. *"Applicable Monthly Expense Amounts"*

Courts treating the Local Standards as expense ceilings generally find ambiguity by looking to the word "applicable" in § 707(b)(2)(A)(ii)(I)'s reference to "applicable monthly expense amounts specified under the National Standards and Local Standards."  In their view, "applicable" as used in this section may refer to either the selection of the appropriate governing National and Local Standards for each debtor based on objective criteria, such as county of residence or family size, or it may refer to the expense deduction amounts "as applied by" the IRS through the Handbook guidelines.  *In re Slusher*, 359 B.R. at 307-08 ("What does the word 'applicable' mean in this context?  Does it mean, as the debtor suggests, that you cross-match the debtor's location and status against the standards as published, and no more?  Or does it mean, as the trustee contends, that this court should interpret the standards as the IRS would, including

12

any direction or discretion given to IRS employees by the IRS internal publications?").  If the

latter view is an accepted interpretation of the provision's plain meaning, these courts argue, then

the statute is ambiguous and courts may properly resort to "any direction or discretion given to

IRS employees by the IRS internal publications."  *Id.* at 308; *see also In re Rezentes*, 368 B.R. at

61-62 (citing *Slusher* with approval).

In spite of the interpretation given to the word "applicable" by the court in *In re Slusher*, I

find nothing within § 707(b)(2)(A)(ii)(I) itself directing or even hinting that Congress intended

for courts to "apply" the Local and National Standards in the same manner as outlined in the

Handbook.  The entire relevant portion of this subsection reads, "[t]he debtor's monthly

expenses shall be the debtor's applicable monthly expense amounts specified under the National

Standards and Local Standards . . . ."  As noted above, plain meaning is "determined by

reference to the language itself, the specific context in which that language is used, and the

broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

This statutory provision makes no reference to the Financial Analysis Handbook.  Instead, §

707(b)(2)(A)(ii)(I) reads so that "applicable" modifies "monthly expense amounts specified

under the National Standards and Local Standards."  In this sense, a court is always required to

"apply" the Local Standards and National Standards because expense amounts depend on factors

including a debtor's family size and location.  The Local Standards mortgage/rent expense

allowance for a five-person household in Orange County, New York would not "apply" to the

debtor in this case because he is part of a three-person household in Bronx County.  *See In re

Briscoe*, 374 B.R. 1, 10 (Bankr. D. Colo. 2007) ("The simplest way to interpret the modifier

'applicable' is to read it as being subordinate to the same limiting phrase ('specified under the . .

. Local Standards') as the object ('monthly expense amounts') that it modifies.  This reading puts

an end to the apparent ambiguity in the term 'applicable,' for it is clear that, within the context of

the Local Standards . . . the term must refer to the varying expense amounts listed for individuals

subject to different circumstances."); *In re Haley*, 354 B.R. at 344 ("With the exception of the

[vehicle] ownership expense, all other Local Standards vary depending on where the debtor

resides.  Thus, where a debtor resides dictates which Local Standards are 'applicable.'").  The

only way to find ambiguity in § 707(b)(2)(A)(ii)(I) is to immediately jump to referencing the

Handbook interpretation of the Local Standards.  As noted above, this cannot be done if the plain

language of the statute controls.  *In re Farrar-Johnson*, 353 B.R. at 231 ("It [§

707(b)(2)(A)(ii)(I)] nowhere incorporates wholesale all IRS criteria for tax collection matters.").

Further support for this interpretation of "applicable" is found by reading the rest of §

707(b)(2)(A)(ii)(I).  More fully, this provision reads that "[t]he debtor's monthly expenses shall

be the debtor's *applicable* monthly expense amounts specified under the National and Local

Standards, and the debtor's *actual* monthly expenses for the categories specified as Other

Necessary Expenses . . . ."  (emphasis added).  Most courts to consider the effect of §

707(b)(2)(A)(ii)(I) have commented in some fashion on Congress's use of "applicable monthly

expense amounts" when referring to the Local and National Standards, and how this differs from

the statement "actual monthly expenses" referring to "Other Necessary Expenses."  For courts

finding that "applicable" refers to the applicable amount listed under the Local Standards (as

opposed to referencing how the IRS would "apply" a given standard under the Handbook),

statutory interpretation is used to demonstrate that Congress intended to treat expenses under the

National and Local Standards differently than Other Necessary Expenses.  *In re Fowler*, 349

B.R. at 418 ("The use of 'actual' with respect to Other Necessary Expenses and 'applicable' with

respect to the National and Local Standards must mean that Congress intended two different

applications.") (citing *Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("[W]here Congress includes

particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acted intentionally and purposefully in the disparate inclusion or

exclusion.")); *In re Demonica*, 345 B.R. 895, 902 (Bankr. N.D. Ill. 2006) (noting that giving

effect to every word in § 707(b)(2)(A)(ii)(I) requires that "actual monthly expenses" be

interpreted differently than "applicable monthly expenses."); *see also In re Farrar-Johnson*, 353

B.R. at 230-31 ("Congress drew a distinction in the statute between 'applicable' expenses on the

one hand and 'actual' expenses on the other.  'Other Necessary Expenses' must be the debtor's

'actual' expenses.  Expenses under the 'Local Standards,' in contrast, need only be those

'applicable' to the debtor of where he lives and how large his household is.  It makes no

difference whether he 'actually' has them.") (citing Eugene R. Wedoff, *Means Testing in the

New § 707(b)*, 79 AM. BANKR. L. J. 231, 231 (2005)); *In re Chamberlain*, 2007 WL 1355894, at

*4 (Bankr. D. Ariz. Apr. 26, 2007) ("The simple answer is that [applicable] references both the

region of the country in which the debtor lives and the selection that must be made between the

two columns that appear in the Local Standards . . . .  It takes a tortured reading to make

'applicable' refer to anything else.").

In opinions finding that Local Standards are a cap on expenses, there is again an

emphasis on the Handbook interpretation of expense calculations under the Local Standards.

These courts reason that under the IRS interpretation of Local Standards, a debtor would not be

allowed his or her "actual" transportation or housing expenses if he or she actually spent more

than the Local Standards.  In effect, the cap would reduce any allowed expenses to the amount

under the Local Standards from the actual amount spent, and therefore the distinction between

applicable and actual would remain meaningful.  *Weiland v. Thomas*, 382 B.R. 793, 798 (D.

Kan. 2008); *see also In re Slusher*, 359 B.R. at 308.  However, this interpretation again relies

upon referencing the Handbook when the statute does not direct courts to do so.  Moreover,

"applicable" would mean the equivalent of "actual" in any instance where a debtor spent less

than the Local Standards expense amount, thereby making this congressional distinction

meaningless as applied to the circumstances of many debtors, including Mr. Osei.

     Most importantly, interpreting the Local Standards as a cap on a debtor's expense

amounts, as the IRS does, is inconsistent with § 707(b)(2)(A)(ii)(I).  In order for the Local

Standards to be treated as a cap, courts look to the provision of the Handbook stating that

"[t]axpayers will normally be allowed the local standard or the amount actually paid, whichever

is less."  Financial Analysis Handbook, § 5.15.1.7.  However, the Handbook treats the National

Standards expense amounts differently than those under the Local Standards by allowing

deductions under the National Standards "without questioning the amount actually spent."

Financial Analysis Handbook, § 5.15.1.8.  The word "applicable" in § 707(b)(2)(A)(ii)(I)

modifies "monthly expense amounts specified under the National *and* Local Standards."  If

Congress intended for the monthly expense amounts specified under Local Standards and

National Standards to be treated differently, then why would the word "applicable" be used to

modify both?  To support this position requires reading the Handbook guidelines into the statute

and ignoring the statute's identical treatment of both the Local Standards and National Standards.

This interpretation contravenes the plain language of the statute.

     In this case, eCAST does not dispute that Debtor actually incurred a mortgage/rent

expense.[8]  Considering the IRS interpretation of the Local Standards is improper since neither §

---

[8]     For this reason, the Court declines to address whether a debtor would be allowed to claim a particular expense provided for under the Local Standards if the debtor did not actually incur some expense for that specific item.  For instance, this case does not decide whether a debtor could deduct a car payment expense if the debtor owned his or her car free and clear of any liens.  Several courts addressing this issue have found that such an

16

1325(b)(3) nor § 707(b)(2) refer to the Financial Analysis Handbook interpretation of expense calculations.  A straight-forward interpretation of the plain language of the statute would allow a debtor in a given county, with a given family size, to deduct the full amount of the debtor's "applicable" monthly mortgage/rent expense under the Local Standards.  This leads the Court to reject the view that "applicable monthly expense amounts" refers to any language in the IRS Financial Analysis Handbook and to find that the "applicable monthly expense amounts" language in § 707(b)(2)(A)(ii)(I) is unambiguous.

### 2.  *"In Accordance With"*

At least one decision finding that the Local Standards act as a cap on allowed expenses puts significant weight on § 1325(b)(2) and the mandate that deductions from current monthly income must be "amounts reasonably necessary to be expended" to maintain the debtor or the debtor's dependents.  *In re McGillis*, 370 B.R. at 730 ("Section 1325(b), not Section 707, ultimately controls the determination of disposable income for purposes of plan confirmation under Chapter 13, and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their future support and maintenance.")  *McGillis* finds ambiguity in § 1325(b)(3)'s mandate that reasonably necessary expenses shall be determined "in accordance with" §§ 707(b)(2)(A) and (B), thereby preserving a court's ability to judge the reasonableness

---

expense deduction is still appropriate.  *See In re Kimbro*, 2008 WL 2369141, at *12 (concluding that a debtor may deduct an ownership expense for a vehicle regardless of whether the debtor has a debt or lease payment on that vehicle); *In re Haley*, 354 B.R. 340 (Bankr. D. N.H. 2006) (allowing debtor to deduct a vehicle ownership expense even though the debtor was not making any car payments); *see also In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006) (allowing a debtor living in military housing, with no actual housing expense, to deduct the housing and utility expenses provided for under the debtor's Local Standards).  Still others have disallowed expense deduction where no amount of that particular expense was actually incurred by a debtor.  *See, e.g., In re Wilson*, 383 B.R. 729, 732-33 (B.A.P. 8th Cir. 2008) ("[W]hile bankruptcy courts have been divided on this issue, the appellate courts considering this question have all concluded that a vehicle ownership expense is only applicable if a debtor is in fact incurring such an expense."); *In re Howell*, 366 B.R. 153, 155-58 (Bankr. D. Kan. 2007) (disallowing ownership expense under Local Standards where no car payment was actually incurred).

of the Local Standards expense amounts for each debtor under the § 1325(b)(2) "reasonably

necessary" standard.  At least two other courts disagree with this analysis of the interplay

between §§ 1325(b)(2) and (b)(3), finding instead that (b)(3) is a forceful directive for how to

determine those amounts "reasonably necessary" under § 1325(b)(2).  *In re Briscoe*, 374 B.R. at

1 n.2 (§ 1325(b)(2) "does not supplement the phrase 'amounts reasonably necessary to be

expended' in 1325(b)(2)—it defines it"); *In re Van Bodegom Smith*, 383 B.R. 441, 448 (Bankr.

E.D. Wis. 2008) ("The term 'reasonably necessary' in § 1325(b)(3) is not superfluous−it is the

very term that the section defines.").

In this Court's view, the phrase "in accordance with" in § 1325(b)(3) is unambiguous,

and the *In re McGillis* decision downplays the importance of § 707(b)(2)(A)(ii)(I) for purposes

understanding the directive in § 1325(b)(3).  Instead, the reasoning of the courts in *In re Briscoe*

and *In re Van Bodegon Smith* should control the interpretation of § 1325(b)(3).  By the plain

language of § 1325(b)(3), "reasonably necessary" expenses under § 1325(b)(2) "*shall* be

determined *in accordance with* subparagraphs (A) and (B) of section 707(b)(2) . . . ."  (emphasis

added).  As *McGillis* recognizes, "accord" is synonymous with "agreement" or "conformity."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 12 (1981).  Section 1325(b)(3) therefore

directs that any determination of "reasonably necessary" expenses under § 1325(b)(2) must be

made "in agreement with" or "in conformity with" the language in § 707(b)(2).  Accordingly, §

1325(b)(3) is more than a mere suggestion that courts consider the language of § 707(b)(2) when

determining "reasonably necessary" expenses under § 1325(b)(2).  Section 707(b)(2)(A)(ii)(I)

then states that monthly expenses "*shall be* the debtor's *applicable monthly expense amounts*

*specified* under the National Standards and Local Standards . . . ."  (emphasis added).  Therefore,

when considering the interplay of §§ 1325(b)(3) and 707(b)(2)(A) and (B), Congress

unambiguously directed that any expenses qualifying as "applicable monthly expense amounts" under the Local Standards would be deemed "reasonably necessary" expenses under § 1325(b)(2).  Congress could have expressed an intent to limit the effect of the National and Local Standards by stating in § 1325(b)(3) that courts determining what constitute reasonably necessary expenses under § 1325(b)(2) "may consider subparagraphs (A) and (B) of section 707(b)(2)."  The chosen language was more forceful.  Again, the Court finds no ambiguity in the language of § 1325(b)(3), requiring that a determination of whether expenses are "reasonably necessary" under § 1325(b)(2) be made by looking to amounts specified under the Local and National Standards.

### D.  Legislative History

If the Court were to conclude that the statutory language is ambiguous, the meager legislative history would nevertheless lead the Court to conclude that Congress intended that a debtor is permitted to deduct the full amount of expenses provided in the Local Standards. Before the enactment of BAPCPA, courts retained significant discretion to determine a debtor's disposable income, which was defined as income "not reasonably necessary to be expended . . . for the maintenance or support of either the debtor or a dependent of the debtor."  11 U.S.C. § 1325(2)(A).  Disposable income was usually calculated by subtracting a debtor's expenses on Schedule J from income on Schedule I, *In re Alexander*, 344 B.R. 742, 746 (Bankr. E.D.N.C. 2006), and courts exercised discretion to determine whether the Schedule J expenses were "reasonably necessary."  *Id.*; *In re Naslund*, 359 B.R. at 785 (noting that prior to BAPCPA, "[a] debtor's projected disposable income was generally determined by looking to the debtor's Schedules I and J").

Committee reports "represent the most persuasive indicia of congressional intent in enacting a statute." *In re Teligent, Inc.*, 268 B.R. 723, 737 (Bankr. S.D.N.Y. 2001). The only written report before enactment[9] comes from the House Committee on the Judiciary. H.R. REP. NO. 109-31, pt. 1 (2005). In a section entitled "Purpose and Summary," this report states the following:

> The purpose of [BAPCPA] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors. With respect to the interests of creditors, the proposed reforms respond to many of the factors contributing to the increase in consumer bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system. The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford.

H.R. REP. NO. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89.

Changes made to § 1325(b)(3) are not discussed within this report. With regard to § 707(b), which governs dismissal of an individual debtor's bankruptcy case based on abuse, the relevant portion of the House report states the following:

> As amended, section 707(b) of the Bankruptcy Code would require a court to presume that abuse exists if the amount of the debtor's remaining income, after certain expenses and other specified amounts are deducted from the debtor's current monthly income (a defined term) when multiplied by 60, exceeds the lower of the following: (1) 25 percent of the debtor's nonpriority unsecured claims, or $6000 (whichever is greater); or (2) $10,000. . . . In addition to other specified expenses, the debtor's monthly expenses−exclusive of any payments for debts (unless otherwise permitted)−must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses.

---

[9]    Unfortunately, BAPCPA does not include an extensive legislative history. The bill was introduced in the Senate Committee on the Judiciary on February 1, 2005, S. 256, 109th Cong. (2005), and ultimately reported favorably to the full Senate several weeks later without a written report. BAPCPA became law on April 20, 2005. Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). The only written report before enactment comes from the House Committee on the Judiciary from April 8, 2005 after the full Senate voted in favor of the bill. H.R. REP. NO. 109-31, pt. 1 (2005).

H.R. REP. NO. 109-31, pt. 1, at 13 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 99-100.

This legislative history does not manifest any intent to interpret the National and Local

Standards in the same manner as the IRS. In fact, the only reference to the IRS in House Report

No. 109-31's discussion of § 707(b) is to "the applicable monthly amounts *set forth* in the

Internal Revenue Service Financial Analysis Handbook" which include "the National and Local

Standards categories" of expenses. This statement does show an intent to use the data contained

within the Financial Analysis Handbook on the Local and National Standards categories of

Necessary Expenses. *See also In re Briscoe*, 374 B.R. at 9 (noting that the IRS collected and

applied "objective data in supplying values for the National and Local Standards, and "[t]his raw

data is readily adaptable for use in other contexts"). This same section of the House report also

notes that the new § 707(b) created a presumption of abuse for above-income debtors through a

formula considering a debtor's income "after certain expenses and other specified amounts are

deducted." As noted by other courts, the BAPCPA amendments to §§ 1325(b)(3) and 707(b)(2)

were intended to make the calculation of disposable income for above-income debtors more

"formulaic" or "mechanical." *In re Farrar-Johnson*, 353 B.R. at 228 (citing *In re Davis*, 348

B.R. 449, 452-53 (Bankr. E.D. Mich. 2006)). It is entirely plausible that the intent was to apply

the Local Standards raw data compiled by the IRS to form a quick, objective calculation of

disposable income for purposes of the § 707(b) presumption of abuse. By referencing § 707(b),

§ 1325(b)(3) could also be interpreted as adopting this same quick calculation for determining

disposable income in chapter 13 plan formulation.

This Court's interpretation of §§ 707(b) and 1325(b)(3) is also supported by the history of

the BAPCPA amendments. A prior version of BAPCPA (debated in 1998 but never enacted)

required a calculation of expenses "under the applicable National Standards, Local Standards,

and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in

the area in which the debtor resides as determined under the Internal Revenue Service financial

analysis for expenses in effect as of the date of the order for relief." *In re Barrett*, 371 B.R. 855,

858 (Bankr. S.D. Ill. 2007) (citing H.R. REP. 3150, 105th Cong. § 101(3)(A) (1998)).  By 2005,

the reference to expenses "as determined under the Internal Revenue Service financial analysis"

was taken out and replaced by the current language, "applicable monthly expense amounts

specified under the National Standards and Local Standards," showing an intent by Congress not

to be bound by the financial analysis and to look only toward amounts set forth in the National

and Local Standards.  *In re Fowler*, 349 B.R. at 419; *In re Morgan*, 374 B.R. at 360 (citing *In re

Fowler* with approval); *see also* 2A SINGER, NORMAN J., SUTHERLAND STATUTORY

CONSTRUCTION § 48:4 (7th ed. 2007) ("Legislative history can also consider part of a statute that

never came into existence.  For example where the language under question was rejected by the

legislature and thus not contained in the statute it provides an indication that the legislature did

not want the issue considered.").

Those decisions capping expenses at the Local Standards level emphasize the over-

arching purposes stated in the legislative history for enactment of BAPCPA.  "The heart of the

[BAPCPA] consumer bankruptcy reform consists of the implementation of an income/expense

screening mechanism . . . which is intended to ensure that debtors repay creditors the maximum

they can afford." H.R. REP. NO. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N.

88, 89.  The means test was intended to "ensure that those who can afford to repay some portion

of their unsecured debts [be] required to do so."  *In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D.

Tex. 2006) (quoting 151 CONG. REC. S2470 (daily ed. Mar. 10, 2005) (statement of Sen.

Nelson)).  However, these general provisions do not directly speak to the intent of Congress

when enacting §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I) and do not show this Court's interpretation of these provisions to be contrary to congressional intent.  In a dissenting view to enactment of BAPCPA, the House Report from the Committee on the Judiciary also stated that "[t]he bill also makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income . . . .  The formula remains inflexible and divorced from the debtor's actual circumstances."  *In re Grunert*, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006) (citing H.R. REP. NO. 109-31, pt 1 at 553 (2005)).  This more specific reference to the text at issue in this motion more closely supports the "inflexible" standard on calculation of expenses which this Court advances.

### E.  The Federal Rules of Bankruptcy Procedure and Official Form 22C

While not decisive or suggestive in determining the intent of Congress, the Federal Rules of Bankruptcy Procedure, the Official Forms promulgated thereunder, and Committee Notes on the Official Forms also take the view that a debtor may deduct the entire amount of his or her Local Standards expense allowance.  Unless these materials are inconsistent with a statutory directive, they should be given force.  "The Official Forms, like the Interim Bankruptcy Rules, were promulgated by the Rules Committee and approved by the Judicial Conference of the United States.  Both the Rules and the Official Forms share the presumption of validity."  *In re Morgan*, 374 B.R. at 361; *see also In re Dominguez*, 51 F.3d 1502 (9th Cir. 1995) (noting that the bankruptcy rules, as "properly promulgated procedural rules," are presumptively valid if they are not inconsistent with the statute).

Line 25B of the form states the following:

> Enter in Line a below, the amount of the IRS Housing and Local Standards; mortgage/rent expense for your county and household size (this information is

available at www.usdoj.gov/ust/ or from the clerk of the bankruptcy court); enter
on Line b the total of the Average Monthly Payments for any debts secured by
your home, as stated in Line 47; subtract Line b from Line a and enter the result in
Line 25B.  Do not enter an amount less than zero.

Official Form 22C directs a debtor to enter on Line 25B "the amount of the IRS Housing

and Local Standards; mortgage/rent expense for your county and household size" and then to

deduct from this amount "the total of the Average Monthly Payments for any debts secured by

your home."  This calculation avoids double-counting by allowing a debtor to further deduct

only the difference between the Local Standards and actual expenses (as long as the Local

Standards amount is higher than the amount actually spent).  Nothing is mentioned about

requiring the Debtor to deduct either the Local Standards amount or the amount actually spent in

payment of debt service on a debtor's home, "whichever is less."  This contrasts with how

"Other Necessary Expenses" are treated in the Official Form 22C calculation.  "Other Necessary

Expenses" listed in Official Form 22C on lines 30-37 include items such as taxes, involuntary

deductions for employment, life insurance, court-ordered payments, education for employment

or for a physically or mentally challenged child, childcare, health care, and telecommunication

services.  As opposed to the strict deduction for expenses covered by the Local Standards on

Line 25B, Official Form 22C directs debtors making Other Necessary Expenses deductions in

lines 30-37 to enter total monthly amounts or total average monthly amounts that debtors

"actually pay for," "actually expend," "actually incur," or "are required to pay" for each expense.

The Rules Committee noted in enacting Official Form 22C that "[e]ach of the amounts specified

by the IRS in the Local Standards are treated by the IRS as a cap on expenses, but because §

707(b)(2)(A)(ii)(I) provides for deduction in the amounts specified under the Local Standards,

the forms treat these amounts as allowed deductions."  Advisory Committee Note on Forms,

*available at* http://www.uscourts.gov/rules/BK Forms 06 Official/Form 22A-

C_CN_Cum_1006.pdf.  FED. R. BANKR. P. 1007(b)(1) states that a debtor "shall file schedules

of assets and liabilities, a schedule of current income and expenditures . . . and a statement of

financial affairs, prepared as prescribed by the Official Forms."  Official Form 22C is the form

used for creating the "Chapter 13 Statement of Current Monthly Income and Calculation of

Commitment Period and Disposable Income."  As noted above, Line 25B of Form 22C directs a

debtor to "enter in Line a below, the amount of the IRS Housing and Local Standards;

mortgage/rent expense for your county and household size . . . ."  No mention is made in the

Bankruptcy Rules, Official Form 22C, or in the Committee Notes of applying the Local

Standards as an expense cap.  Since the plain language of §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I)

and the legislative history support allowing a full expense deduction as provided for under the

Local Standards, there is also no basis to disturb the interpretation given these provisions by the

Judicial Conference of the United States.


### F.  Policy Arguments

As recognized by at least one other court, "[a]ll but one of the values set forth in the

National Standards come from the Bureau of Labor Statistics (BLS) Consumer Expenditure

Survey . . . [and] [t]hose values not derived from BLS data were created by using either a fixed

rate (for miscellaneous expenses included in the National Standards) or by determining

reasonable expense amounts on a county-by-county basis (for the values listed in the Local

Standards)."  *In re Briscoe*, 374 B.R. at 9.  When considered as raw data, use of the Local

Standards need not be driven by the interpretation of appropriate deductions noted in the

Financial Analysis Handbook if Congress intended courts to consider the data in light of the

principles of bankruptcy law, rather than for purposes of tax collection.  *Id.* ("Assuming that

Congress did not intend for debtors and the courts and trustees that oversee them to become

amateur tax collectors, it would be much odder for Congress to have imported the IRS's internal

collection procedures into the Bankruptcy Code than for Congress to have referred to the

objective data used in applying those procedures without requiring debtors to follow the

procedures themselves.").  The Financial Analysis Handbook and the rest of the Internal

Revenue Manual "provide guidance to IRS field agents working with taxpayers to resolve tax

collection issues," to be used "to maximize revenue to the IRS without specific regard to

taxpayers' other obligations to secured or unsecured creditors."  *In re Roberts*, slip. op., 2008

WL 542503, at *3.  Discussion of the National and Local Standards on the IRS website includes

a disclaimer stating that the agency does not believe the financial standards discussed in the

Internal Revenue Manual apply to bankruptcy cases:

> Disclaimer:  IRS Collection Financial Standards are intended for use in
> calculating repayment of delinquent taxes.  These Standards are effective on
> March 1, 2008 for purposes of federal tax administration only.  Expense
> information for use in bankruptcy calculations can be found on the website for the
> U.S. Trustee Program.

Collection Financial Standards, *available at* http://www.irs.gov/individuals/

A decision by the Sixth Circuit Bankruptcy Appellate Panel recently noted this disclaimer as

evidence that the IRS's interpretation of Local and National Standards deductions do not control

in the bankruptcy context.  *See In re Kimbro*, 2008 WL 2369141, at *7.  In contrast, chapter 13

"attempts to provide a structure for the repayment of all debts based on established priorities,"

making adoption of the Handbook guidelines "at odds with [BAPCPA's] purposes."  *In re

Roberts*, 2008 WL 542503, at *4.  Since the Local and National Standards data are used for

different purposes in tax collection activities than in the bankruptcy context, the IRS

interpretation of these standards should carry little to no weight.

Application of the Local Standards as a cap also leads to anomalous results.  If the Local Standards were treated as a cap on expenses, every chapter 13 debtor would have a perverse incentive to spend as much as possible (up to the applicable expense allowance under the Local Standards) to benefit the most from allowed expenses.  Instead of rewarding those debtors who attempt to be frugal in order to have more "cushion" between their plan payments and actual expenses in hopes of improving their chances successfully to complete all plan payments, it would punish them for doing so.  *In re Swan*, 368 B.R. at 21; *see also In re Morgan*, 374 B.R. at 362 ("If the Court were to accept the Trustee's position and cap Debtor's housing deduction on the CMI Form at his actual expense, it would have the effect of locking Debtor into that expense for the duration of the Chapter 13 Plan," and further that this would "create an incentive for debtors to relocate to enable them to spend the full amount of the allowable housing deduction on their housing expense.").  Even courts holding that a debtor may only deduct the lesser of either the IRS Local Standards expenses or actual expenses recognize the anomalous and potentially unfair result for debtors who legitimately try to reduce expenses to meet the demands of creditors.  *In re Rezentes*, 368 B.R. at 62 ("The irony of this case is that the debtors must make larger plan payments because they moved into a too-small home in a valiant and commendable effort to pay their creditors.  If the debtors had remained in one of their prior residences, rather than reduced their housing expense in a failed attempt to keep up with their bills, the debtors could have claimed the entire local standard housing expense.  Moreover, although the record does not contain evidence on this point, it seems unlikely that the debtors want to live for the next five years in a three bedroom house occupied by five adults and four children.  Presumably, the debtors are seeking chapter 13 relief so they can resume a standard of living which is more reasonable and which chapter 13 would permit . . . .").

Allowing the exact expense amount under the Local Standards benefits debtors regardless of whether they incur vehicle or housing expenses (or both) because it builds a layer of flexibility into the chapter 13 plan process.  Allowing debtors with older vehicles encumbered by less debt to deduct the full amount of vehicle ownership expenses under the Local Standards (or allowing for the full deduction of expenses even where the vehicle is not subject to any lien) recognizes that debtors with older vehicles are likely to have to replace them or pay for substantial repairs during the life of a typical chapter 13 plan.  *In re Swan*, 368 B.R. at 19.  With housing expenses, changes in family size, increases in the cost of living, or other factors could give rise to the need to incur further expenses during a plan.  *Id.* at 21 ("Circumstances inevitably change.  Rents generally go up.  People move.").  Essentially, the full deductions recognize "typical" expense levels in a given region for a given family size so that Debtors spending less can plan for the day when their actual expenditures may rise.  In turn, the bright-line deduction for expense amounts caps the allowed deduction so that Debtors actually spending more than the Local Standards can only deduct expense levels determined under the Local Standards to be reasonable.  While some courts reject this policy argument, finding it creates an "emergency cushion" for which there is no support in the Bankruptcy Code, *In re Sawdy*, 362 B.R. 898, 908 (Bankr. E.D. Wis. 2007), *vacated and remanded sub nom. Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008), others recognize that failing to account for such situations is likely to lead to instances where debtors are forced to choose between making plan payments or spending more on vehicles or housing, even when legitimate needs arise.  *In re Swan*, 368 B.R. at 20 ("The Debtor could be forced to choose between making Plan payments and buying or leasing a new vehicle, and could ultimately wind up defaulting on the Plan as a result.").  While it is possible for a debtor to later modify a plan if there are changed circumstances, such as a need to purchase a new car, this

28

leads the Debtor to incur further attorney's fees and to burden the courts with such requests—ultimately an inefficient use of judicial resources. *Id.* at 20. In this manner, allowing a bright-line expense deduction may even counterbalance harm to creditors from the corresponding reduction in disposable income by reducing the costs of administering the chapter 13 proceeding. Most importantly, were such a cushion allowed by applying a bright-line rule for expense allowances, chapter 13 debtors would be better able to respond to changed circumstances over the life of their plans, and better able to complete their chapter 13 cases with the benefit of a discharge.

## CONCLUSION

For the foregoing reasons, the Court overrules the objection to confirmation filed by eCAST. As counsel for the Chapter 13 Trustee indicated on May 15 that there remain outstanding issues regarding confirmation of the plan, a second hearing on confirmation of the plan will go forward on June 26, 2008.

**IT IS SO ORDERED.**

DATED:      June 25, 2008
            New York, New York

                                        **/s/Martin Glenn_____**
                                        MARTIN GLENN
                                        United States Bankruptcy Judge